TONG & CO. *v.* UNITED STATES (NO. 2284).[1]

DRUG—CRUDE—GINSENG—CHOW SUM.

Ginseng roots which have been dried and treated with sugar and honey, such treatment having the purpose and effect of enhancing their value commercially but not therapeutically, known by the Chinese as chow sum and used by them as a medicine, have not been advanced so as to take them without free list paragraph 477, tariff act of 1913, providing for certain crude drugs, and carry them within the provisions of paragraph 27 for certain advanced drugs or those of paragraph 17 for medicinal compounds and combinations.

[Reversed.]

*Frank L. Lawrence* (*Martin T. Baldwin* of counsel) for appellants.

*William W. Hoppin*, Assistant Attorney General (*Pelham St. George Bissell*, special attorney, of counsel), for the United States.

[Submitted without oral argument October 22, 1923.]

Before MARTIN, Presiding Judge, and SMITH, BARBER, and BLAND, Associate Judges.

BLAND, Judge, delivered the opinion of the court:

The importations were chow sum or dried ginseng. The collector considered it prepared medicine, and assessed it with duty at 20 per cent ad valorem under paragraph 17 of the tariff act of 1913, which provides for "chemical and medicinal compounds, combinations, and all other similar articles  *  *  *  when "put up in individual packages of 2½ pounds or less."

The importers urged before the Board of General Appraisers that the goods should be assessed at 10 per cent under paragraph 27 of the tariff act of 1913, as drugs advanced, or be placed under the free list, paragraph 477, of said act, as crude drugs in their natural state.

The board sustained the contention that the goods were dutiable as drugs advanced under paragraph 27. The importers appeal from this decision, and contend that the importations fall under paragraph 477.

This appeal calls for consideration by this court of substantially the same evidence and facts that were involved in G. A. 2505 (T. D. 39006). The sample and testimony of that case were by agreement used in this case.

Paragraphs 17, 27, and 477 of the tariff act of 1913 read as follows:

17. Chemical and medicinal compounds, combinations, and all similar articles dutiable under this section, except soap, whether specially provided for or not, put up in individual packages of two and one-half pounds or less gross weight (except samples without commercial value) shall be dutiable at a rate not less than 20 per centum ad valorem: *Provided*, That chemicals, drugs, medicinal, and similar substances, whether dutiable or free, imported in capsules, pills, tablets, lozenges, troches,

---

[1] T. D. 39897.

ampoules, jubes, or similar forms, shall be dutiable at not less than 25 per centum ad valorem.

27. Drugs, such as barks, beans, berries, buds, bulbs, bulbous roots, excrescences, fruits, flowers, dried fibers, dried insects, grains, gums, herbs, leaves, lichens, mosses, roots, stems, vegetables, seeds (aromatic, not garden seeds), seeds of morbid growth, and weeds; any of the foregoing which are natural and uncompounded drugs and not edible, and not specially provided for in this section, but which are advanced in value or condition by shredding, grinding, chipping, crushing, or any other process or treatment whatever beyond that essential to the proper packing of the drugs and the prevention of decay or deterioration pending manufacture, 10 per centum ad valorem: *Provided*, That no article containing alcohol shall be classified for duty under this paragraph.

477. Drugs, such as barks, beans, berries, buds, bulbs, bulbous roots, excrescences, fruits, flowers, dried fibers, dried insects, grains, gums, gum resin, herbs, leaves, lichens, mosses, logs, roots, stems, vegetables, seeds (aromatic, not garden seeds), seeds of morbid growth, weeds; any of the foregoing which are natural and uncompounded drugs and not edible and not specially provided for in this section, and are in a crude state, not advanced in value or condition by shredding, grinding, chipping, crushing, or any other process or treatment whatever beyond that essential to the proper packing of the drugs and the prevention of decay or deterioration pending manufacture: *Provided*, That no article containing alcohol shall be admitted free of duty under this paragraph.

The Board of General Appraisers in holding that the ginseng in question should be assessed under paragraph 27 at 10 per cent ad valorem as an uncompounded drug, advanced, said:

Upon the record then made we classified the merchandise as a drug advanced under paragraph 27 at 10 per cent ad valorem. Here a fuller record is made, and while the new evidence makes out clearly that the advancement was made to improve its appearance for sale, we feel that does not take it out of paragraph 27, and so hold, adhering to our finding as made in G. A. 8505.

The testimony of the Chinamen engaged in the Chinese drug trade, we think, establishes the following facts: The ginseng root is taken from the ground in the mountains of northern China and transported to the southern portion of China in a dried and shriveled state, and there is soaked or treated with sugar or honey in order to bring back its natural plump appearance, so as to make it more attractive in appearance, and cause it to meet a more ready sale in the market. It is not disclosed just how the sugar or honey is applied, but when imported here the ginseng is frequently incrusted with sugar crystals. The root is not shredded, ground, chipped, crushed, scraped, or changed in any way except to treat it with sugar or honey. When so treated it is heavier and bulkier than the dried ginseng, and is cheaper per pound on account of the sugar content, which adds nothing to its therapeutic value. Greater quantities of the sugar-treated ginseng are required in compounding medicine than are used when the dried article is prescribed. The root is never used by itself as medicine, but is compounded with other drugs. Before compounding it must be pounded into powder or sliced, and often it

is cooked, in which process the addition of the sugar or honey has no effect on use or value. The sugar restores the ginseng to its natural appearance as it came from the ground, and preserves this appearance until compounded into a medicine. It is used for "shortness of breath" and "to strengthen the breast." It is not used as a food.

The question for the decision of this court is, Has the article been advanced in value or condition by a shredding, grinding, chipping, crushing, or any other process or treatment whatever beyond that essential to the proper packing of the drug and the prevention of decay or deterioration pending manufacture? It is admitted that it is not advanced in value as a drug, but is restored to the value it possessed when it came out of the ground, and that it is not advanced in value by shredding, grinding, chipping, or crushing. Is it advanced in "condition" by "any other process or treatment whatever beyond that essential to the proper packing of the drug and the prevention of decay or deterioration pending manufacture"? We think that it has not been so advanced. There is no advancement in the condition of the root from that in which it left the ground, nor can its condition be said to be advanced from its shriveled, dried condition while in southern China, and whatever process or treatment it may have had can be said to prevent deterioration from its original condition. It would seem that instead of being advanced from its original condition, it has been restored to its natural or original condition, where it was in the crudest possible state. If the sugar treatment changed its original characteristics, its use, or its value, or if the ginseng came out of the ground in its crudest condition shriveled and dried, and the sugaring process was used to make it plump so as to improve its appearance for sale, we might have a different question. However, it is not necessary for us to decide that question, and we do not do so. It seems clear that the importations fall under paragraph 477 of the tariff act of 1913, and as such they are therefore free of duty.

The judgment of the Board of General Appraisers is *reversed*.