DECORATED METAL MANUFACTURING CO. (INC.), AN AMERICAN MANU-
FACTURER, v. UNITED STATES AND PICKFORDS COLONIAL (INC.),
(No. 2342).[1]

1. EVIDENCE, JUDICIAL NOTICE.
   It is well within common knowledge that typewriters are usually, and indeed almost invariably, equipped with metal ribbon spools like the ones at bar, and that the machines are incapable of performing their ordinary functions without them.

2. USE, OCCASIONAL OR EXTRAORDINARY.
   The fact that typewriters are sometimes used for stencil work and carbon copies without ribbons, and that such ribbons are sometimes used on other machines, such as adding and telegraph machines, does not prevent a typewriter-ribbon spool from being regarded as a part of a typewriter.

3. COMMERCIAL DESIGNATION.
   Proof that typewriter ribbon spools are known commercially as ribbon spools or typewriter ribbon spools is not proof that they are not also known as parts of typewriters, and does not interfere with their classification as such.

4. RELATIVE SPECIFICITY.
   The provision of paragraph 1542, tariff act of 1922, for parts of typewriters is more specific than that of paragraph 399 for manufactures of iron or steel not specially provided for, or that of paragraph 372 for machines or parts thereof not specially provided for.

5. CONSTRUCTION, PARAGRAPH 1542, TARIFF ACT OF 1922—PARTS OF TYPE-
   WRITERS.
   The provision of paragraph 1542, tariff act of 1922 for "typewriters * * * whether in whole or in parts" is not restricted to typewriter parts imported as typewriters in a knockdown condition. The word "typewriters" alone includes the knockdown, and the construction would reduce the provision for parts to surplusage.

6. CONSTRUCTION, PARAGRAPH 1542, TARIFF ACT OF 1922—"TYPEWRITERS
   * * * INCLUDING REPAIR PARTS."
   The provision of paragraph 1542, tariff act of 1922, "including repair parts," with reference to typewriters, is one of specification only, and not one of extension. It is not restricted to repair parts for foreign-made machines already imported.

---

[1] T. D. 40061.

7. Typewriter Ribbon Spools.

Typewriter ribbon spools are admissible free of duty under paragraph 1542, tariff act of 1922, as parts of typewriters, rather than dutiable under paragraph 399, as miscellaneous manufactures of iron or steel, or under paragraph 372, as miscellaneous machines or parts.

## United States Court of Customs Appeals, March 3, 1924.

Appeal from Board of United States General Appraisers, G. A. 8710 (T. D. 39903).

[Affirmed.]

*Curtis, Fosdick & Belknap* (*James F. Curtis, Esq.*, of counsel) for appellant.
*William W. Hoppin,* Assistant Attorney General, and *B. A. Levett* for appellees

[Oral argument February 14, 1924, by Mr. Curtis and Mr. Levett.]

Before Martin, Presiding Judge, and Smith, Barber, Bland, and Hatfield, Associate Judges.

Martin, Presiding Judge, delivered the opinion of the court:

The merchandise now in question was imported under the tariff act of 1922. It consisted of typewriter ribbon spools, which are the familiar rotating metal spools used to carry the rolls of print ribbon upon typewriters and other similar machines. The collector classified them as parts of typewriters, and admitted them to free entry under the provision for typewriters whether in whole or in parts, in paragraph 1542 of the act.

The appellant, the Decorated Metal Manufacturing Co. (Inc.), is an American manufacturer of similar metal spools, and in due course it filed a protest with the collector under section 516 (*b*) of the act, denying that the imported spools were entitled to free entry, and claiming that they were dutiable at the rate of 40 per cent ad valorem under paragraph 399, as manufactures of iron or steel not specially provided for, or at the rate of 30 per cent ad valorem under paragraph 372, as machines or parts thereof not specially provided for, or at certain other alternative rates set out in the protest.

The protest was regularly tried upon evidence before the Board of General Appraisers, and was overruled. From that judgment of the board the protestant now appeals.

The following three paragraphs, copied respectively from the tariff acts of 1909, 1913, and 1922, relate to the present subject:

Tariff act of 1909 (dutiable list).

197. Cash registers, jute manufacturing machinery, linotype and all typesetting machines, machine tools, printing presses, sewing machines, typewriters, and all steam engines, * * * thirty per centum ad valorem; * * *.

Tariff act of 1913 (free list.)

441. Cash registers, linotype and all type-setting machines, sewing machines, typewriters, shoe machinery, cream separators valued at not exceeding $75, sand-blast machines, sludge machines, and tar and oil spreading machines used

in the construction and maintenance of roads and in improving them by the use of road preservatives, all the foregoing whether imported in whole or in parts, including repair parts.

Tariff act of 1922 (free list).

1542. Linotype and all typesetting machines, typewriters, shoe machinery, sand-blast machines, sludge machines, and tar and oil spreading machines used in the construction and maintenance of roads and in improving them by the use of road preservatives; all the foregoing whether in whole or in parts, including repair parts.

It appears that typewriters were not enumerated eo nomine in any tariff act prior to that of 1909. Under paragraph 197 of that act typewriters together with cash registers, jute manufacturing machinery, linotype and all typesetting machines, machine tools, printing presses, sewing machines, and steam engines were made dutiable eo nomine at the rate of 30 per cent ad valorem. The paragraph, however, failed to make provision for parts of any of the machines thus enumerated, and accordingly such parts remained dutiable in general at the rate of 45 per cent ad valorem as manufactures of metal not specially provided for, under paragraph 199 of the act.—Norma Co. of America v. United States (6 Ct. Cust. Appls. 89; T. D. 35338).

In the tariff act of 1913 (par. 441), Congress placed typewriters eo nomine upon the free list, together with most of the other articles named in paragraph 197 of the tariff act of 1909. The later enactment contained also the following provision for parts of the enumerated articles, to wit, "all the foregoing whether imported in whole or in parts, including repair parts." It appears from the testimony in the present record that under this provision in the tariff act of 1913 typewriter spools like those now in question were regularly passed free of duty as typewriter parts, and that this administrative practice continued uninterruptedly during the entire life time of that act. In the tariff act of 1922 (par. 1542), Congress again placed typewriters eo nomine upon the free list, with a substantially similar provision for parts, the latter reading as follows, to wit, "all the foregoing whether in whole or in parts, including repair parts." Under this paragraph the administrative practice above referred to was continued, and typewriter spools like these were regularly passed free of duty. That practice, however, was challenged by the protest in this case.

In this court the appellant has presented three main contentions in support of the protest. It claims first that the imported spools are not in fact parts of typewriters within the meaning of paragraph 1542; second, that they bear a commercial designation which excludes them from classification as such parts; and third, that paragraph 1542 if properly interpreted does not grant free entry to for-

eign-made spools of this character when imported, as these concededly were, to serve as parts of American-made machines.

In answer to the first contention we may say that it is well within common knowledge that typewriters are usually, and indeed almost invariably, equipped with metal ribbon spools like these, and that the machines are incapable of performing their ordinary functions without them.   In fact the inked ribbon by means of which the printing is accomplished is one of the most familiar and distinctive parts entering into the construction of the article.  It is not simply a casual or optional accessory, but an integral part of the machine itself, and the spool which carries it is of course equally so.  It appears that such spools are chiefly produced by manufacturers who do not make completed typewriters or other parts thereof. They are sold to the manufacturers of typewriters, but in most part they are sold directly to the users thereof.  It also appears that typewriters are sometimes used for stencil work and carbon copies without the use of ribbons; and that such ribbons are sometimes used upon other machines, such as adding machine  and automatic electrical telegraph machines.  These facts, however, are exceptional, and do not negative the averment that in common understanding a typewriter without ribbon spools would not be regarded as a finished article, but as one lacking an essential component part.  In the case of Durbrow & Hearne Mfg. Co. *v.* United States (9 Ct. Cust. Appls. 178; T. D. 39008), this court held that certain steel shuttles came within the enumeration of parts of sewing machines, notwithstanding the fact that the shuttles were chiefly used in this country in embroidery machines, and that the manufacture of shuttles was a separate industry which produced them for sale to both the manufacturer and user of sewing and embroidery machines.  See American Express Co. *v.* United States (4 Ct. Cust. Appls. 279; T. D. 33490); Welte & Sons *v.* United States (5 id. 164; T. D. 34249); Landay Bros. *v.* United States (5 id. 498; T. D. 35151); United States *v.* Witte Cutlery Co. (7 id. 181; T. D. 36504) and United States *v.* Auto Import Co. (168 Fed. 242).

In respect to the effort of the protestant to prove a commercial usage of the terms involved herein, such as would exclude the ribbon spools from classification as parts of typewriters, we think that the board's finding is altogether consistent with the evidence.  It is practically conceded that in the trade the articles in question are generally and uniformly called ribbon spools or typewriter ribbon spools, but such a nomenclature does not imply that they are not also known as parts of typewriters.  It is not infrequent for separate parts of machines to bear particular names of their own, without ceasing to be regarded as parts of the completed machines.  In such

instances the specific names would of course prevail over the general ones if they appeared in competition in a given tariff provision, but in the absence of a specific enumeration the article would be governed by the next most applicable provision to which it would respond. In the present case for example if the tariff act contained a specific enumeration of ribbon spools or typewriter ribbon spools, as well as that for parts of typewriters, the former would of course control. But there is no such enumeration in the act, consequently the present competition is between the provision for typewriter parts and that for manufactures of metal not specially provided for, and other like general classifications, and as between these the former is manifestly the more specific.

The third contention of the appellant relates to the interpretation of the pertinent provision of paragraph 1542. In reference to that provision the appellant says:

> The language is extremely apt for the expression of the intent. What was covered thereby was completed machines, whether imported in a set-up or knockdown condition, plus repair parts necessary for such machines; what was *not* covered was foreign-made parts of American-made machines.

The appellant contends, as appears from the foregoing quotation, that the words "typewriters whether in whole or in parts" mean no more than completed typewriters whether imported in an assembled or knockdown condition, and that the words "including repair parts" relate only to repair parts for foreign-made machines previously imported into this country from abroad. We are not able to agree with this interpretation. Its first contention results in denying any force or effect to the words "whether in whole or in parts," since the word "typewriters," if taken alone, would per se include all completed typewriters whether imported in an assembled or knockdown condition, and according to the appellant's interpretation the enumeration would mean no more than that after the words "whether in whole or in parts" are added to it. Such an interpretation is not admissible, for it must be believed that the latter words were not uselessly employed by Congress in the paragraph. They can be given no effect, however, unless they serve to enlarge the enumeration by bringing typewriter parts within it. And furthermore the appellant's interpretation of the phrase "including repair parts," whereby its signification is limited to such parts only as are intended for the repair of foreign-made typewriters already imported into this country, is also inadmissible. For it ingrafts upon the term in question a limitation which is nowhere expressed nor even implied in the language of the paragraph. The obvious difficulty of administering the provision according to the appellant's interpretation, since merchandise must ordinarily be classified according to its condition as imported rather than according to the use which is to be made of the separate articles after

the importation thereof, together with the fact that since the enactment of the tariff act of 1913 the provision in question has been administered consistently with the importer's claim, is a substantial argument against the appellant's contention. It is apparent also that the appellant's interpretation is inconsistent with administrative practice under the paragraph in relation to the several other enumerations contained therein, as well as to the various agricultural implements which are granted free entry by paragraph 391, tariff act of 1913, and paragraph 1504, tariff act of 1922, in language similar to that now in question. It may be added that the term "including repair parts" is one of specification only and not of extension.

We refer again to the case of Durbrow & Hearne Mfg. Co. *v*. United States, supra, wherein this court dealt with the enumeration of "sewing machines * * * whether imported in whole or in parts, including repair parts," in paragraph 441, tariff act of 1913, and held that it granted free entry to certain sewing-machine shuttles as parts of sewing machines. No reference whatever was made in the decision as to whether the sewing machines for which the shuttles were intended were foreign-made or American-made machines, and the effect of the decision throughout is wholly inconsistent with the contentions presented by the appellant herein.

The judgment of the board is *affirmed*.