UNITED STATES *v.* YICK SHEW TONG Co. (No. 4065) [1]

[1] T. D. 49392.

United States Court of Customs and Patent Appeals, January 24, 1938

*Joseph R. Jackson*, Assistant Attorney General (*Ralph Folks* and *William J. Vitale*, special attorney, of counsel) for the United States.
*Lawrence & Tuttle* (*Frank L. Lawrence* of counsel) for appellee.

[Oral argument December 10, 1937, by Mr. Folks and Mr. Lawrence]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, and LENROOT, Associate Judges

GARRETT, Presiding Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court, First Division, sustaining the protest of appellee against the classification and duty assessment as "Drugs advanced" of certain merchandise imported from China and entered at the port of San Francisco, Calif.

Classification and duty assessment were made under paragraph 34 of the Tariff Act of 1930. Importer protested, claiming the merchandise to be entitled to entry duty free under either paragraph 1669 or paragraph 1722 of the act. Other claims were made in the protest but they were not relied upon at the hearing below, nor are they relied upon here. Hence no consideration will be given them.

The merchandise is represented by various exhibits, and testimony was taken on behalf of both parties. As the case comes to us the protest involves only four commodities (claims as to certain others having been abandoned during the trial below) which, in the brief for the Government, are named as *hoi pak lin* (Lotus nut), *yuen yuk* (Longan, dried fruit), *siu sut* (*Euryale Ferox*, related to lotus nut), and *pak hop* (Lily scales).

The articles involved may be described briefly but somewhat more specifically, in the light of the samples in evidence and of the testimony relative to them, as follows:

*Hoi pak lin* (or lotus nut) consists of hollow halves of a seed, the halves produced by splitting the whole seed. From the seeds so split the seed germ has been removed. This germ, known as *lien tsu*, is a separate commodity and is not here involved. According to the testimony, before importation nothing was done to the *hoi pak lin* except to remove the germ. It was imported in a dried condition.

*Yuen yuk* is the dried meat of a product which has an outer shell and an inner stone. In obtaining it, the shell is broken away and the meat is stripped from the stone and dried. So far as appears from the record, the imported product had undergone no other treatment or process.

The testimony with respect to *siu sut*, said to be related to the lotus nut, is meager but, from the sample, it appears to consist of the broken kernels of some species of nut or seed. From the record, as a whole, it is deduced that it is an aquatic product of the water-lily family. The imported kernels have white interiors covered by a dark outer skin. We conclude from certain testimony that the kernels are covered by an outer shell which is removed before importation and thrown away because it has no value. The kernels are dry and show no evidences of any processing after being broken or split.

*Pak hop* (or lily scales) comes from a scaly bulb. To obtain the scales, the form in which the merchandise is imported, the bulb is washed and laid upon the ground to dry. As it dries, the scales fall off and are gathered and shipped with no further treatment or processing.

The case presents a number of somewhat unusual features.

According to the report of the collector, the merchandise was entered January 27, 1931, and the date of liquidation was October 6, 1931. The protest was filed November 6, 1931. The appraiser's "Answer to Protest" is dated February 17, 1932, which was more than ninety days after the filing of the protest. In this answer the appraiser advised, as stated in the collector's report, that the "Hoi Pak Lin, Yuen Yuk [and], Pak Hop, should have been classified as Free under Par. 1669." The report of the collector further states, "Liquidation was not reviewed within 90 days after filing of protest," and we find no explanation of the failure to comply with the direction of section 515 of the Tariff Act of 1930, which provides, "Upon the filing of such protest the collector shall within ninety days thereafter review his decision, * * *."

At the trial the Government without abandoning the classification made by the collector introduced evidence in an effort to show that the merchandise consisted of vegetables or fruits such as those provided for, respectively, in paragraphs 752 and 775 of the act. Specifically, as we understand it, the claim of the Government is that *yuen yuk*, if not within paragraph 34, is classifiable under paragraph 752 and the other three commodities, if not within paragraph 34, are classifiable under paragraph 775.

So, we have alternative claims by both parties which bring into the case the pertinent parts of the following paragraphs:

PAR. 34. Drugs, such as barks, beans, berries, buds, bulbs, bulbous roots, excrescences, fruits, flowers, dried fibers, dried insects, grains, herbs, leaves, lichens, mosses, roots, stems, vegetables, seeds (aromatic, not garden seeds), seeds of morbid growth, weeds, and all other drugs of vegetable or animal origin; any of the foregoing which are natural and uncompounded drugs and not edible, and not specially provided for, but which are advanced in value or condition by shredding, grinding, chipping, crushing, or any other process or treatment whatever beyond

that essential to the proper packing of the drugs and the prevention of decay or deterioration pending manufacture, 10 per centum ad valorem: *Provided,* That the term "drug" wherever used in this Act shall include only those substances having therapeutic or medicinal properties and chiefly used for medicinal purposes: *And provided further,* That no article containing alcohol shall be classified for duty under this paragraph.

PAR. 752. Fruits in their natural state, or * * * dried, * * * or otherwise prepared or preserved, and not specially provided for, * * * 35 per centum ad valorem * * *.

PAR. 775. Vegetables * * * if cut, sliced, or otherwise reduced in size, * * * or prepared or preserved in any other way and not specially provided for; * * * 35 per centum ad valorem; * * *.

PAR. 1669. Drugs such as barks, beans, berries, buds, bulbs, bulbous roots, excrescences, fruits, flowers, dried fibers, dried insects, grains, herbs, leaves, lichens, mosses, logs, roots, stems, vegetables, seeds (aromatic, not garden seeds), seeds of morbid growth, weeds, and all other drugs of vegetable or animal origin; all the foregoing which are natural and uncompounded drugs and not edible, and not specially provided for, and are in a crude state, not advanced in value or condition by shredding, grinding, chipping, crushing, or any other process or treatment whatever beyond that essential to the proper packing of the drugs and the prevention of decay or deterioration pending manufacture: *Provided,* That no article containing alcohol shall be admitted free of duty under this paragraph.

PAR. 1722. Moss, seaweeds, and vegetable substances, crude or unmanufactured, not specially provided for.

The decision of the trial court has unusual elements. Only two of the three judges who comprise the First Division participated in it. The opinion is by Brown, J., McClelland, P. J., stating "I concur in the conclusion." The decision did not specify the particular paragraph under which the claim was sustained but, after holding paragraphs 34 and 775 non-applicable (paragraph 752 not being specifically mentioned), declared:

Therefore, under the rule of the Supreme Court as expressed in *United States* v. *Buffalo Natural Gas Fuel Co.,* 172 U. S. 339, the importer is entitled to recover the duty paid in any event, which is the purpose for which he brought this suit, whether they are free of duty under paragraph 1722 or under paragraph 1669, it becoming thus unnecessary to decide which free list provision governs.

Elsewhere in the opinion it was said:

The litigation here is an ancient one. The Chinese articles here have always been treated as drugs and many times ruled to be articles in a crude state, with nothing done to them except splitting and drying to advance them in value or condition. Our Chinese citizens and residents have consequently brought them in free of duty over a long period of years.

The decision was rendered October 22, 1936.

The Government filed a motion for rehearing, alleging that the foregoing statement was in error—

and contrary to the decisions of this [U. S. Customs] Court and more particularly to the case of *Him Sing Chong & Co. et al.* v. *United States,* T. D. 47527, 67 Treas. Dec. 245, wherein the Court sustained the Collector's classification and assessed hoi pak lin and bak hop (also known as pak hop) at 10 per centum

ad valorem as a drug advanced, under paragraph 34, Tariff Act of 1922, and hoi pak lin at 35 per centum ad valorem under paragraph 773, of the same act, as vegetables prepared, and yuen yuk, sui sut, were assessed at 10 per centum ad valorem under paragraph 34, of the same act.

The *Him Sing Chong & Co. et al.* case, so alluded to, was decided by the Third Division of the Customs Court February 7, 1935. An appeal was taken to this court, but the same was dismissed upon motion of appellants before it came on for hearing.

The motion for rehearing in the instant case also made reference to the case of *Bow Tsee Tong Co. et al.* v. *United States*, T. D. 43384, 55 Treas. Dec. 752, decided by the Customs Court (Third Division) May 10, 1929. In that case *hon qua* (practically by stipulation) was held duty free as crude drugs, while *yuen yuk, bak hop* and *sui sit* were held dutiable at 10 per centum ad valorem as drugs advanced, the opinion being by Waite, J.

The importer filed written "objections" to defendant's motion for rehearing, in which, referring to the *Him Sing Chong & Co. et al.* and *Bow Tsee Tong Co. et al.* cases, cited by the Government, it said:

So far as these cases involved questions of fact each was presumably decided according to the record therein and the contentions made. In the Bow Tsee Tong case some of the articles involved were, as stated by the court (p. 753), "conceded by the plaintiff to have been advanced in condition." It later appeared that this concession was erroneous, and after an extensive trial various articles herein involved were held to be free of duty as crude drugs, in *Fook* v. *U. S.*, T. D. 44961, June 5, 1931, and *Doap* v. *U. S.*, Abstract 22338. December 6, 1932. These decisions were followed in Abstracts 18453, 18701, 18820–1, 18779–80, 19057–9, 19390, 19779–81, 19920–1, 20027, 21880, 22498, 22647, 24380, 24646, 24805, 28816, 29141, 29226, 29502, and 30053. Those decisions were rendered from 1931 to 1935.

From the Government's brief before us in the instant case, we deduce that the decisions reported in the abstracts so alluded to followed stipulations agreed to by the Government after the decisions in the *Fook Wo Tong & Co. et al.* and the *Doap Leun Hong Co.* cases, *supra*, but before the decision in the *Him Sing Chong & Co. et al.* case, *supra*.

In its brief before us, the Government has cited other decisions of the United States Customs Court, or its predecessor, the United States Board of General Appraisers, upon merchandise identical with, or of the type of, the merchandise at bar, two of which arose under the 1897 tariff act.

It will be noted that all the judicial decisions so far cited were by the United States Customs Court, or its predecessor. From these it appears that upon different records different conclusions have been reached by that tribunal respecting the proper classification of the same merchandise. Not only have different divisions of that court reached different conclusions but the same division (the Third) has

done so. The *Fook Wo Tong Co. et al.* case, *supra*, involved *bak hop*, *yuen yuk*, *hoi pak lin* and *hoi seung lin*, all of which were involved in the later *Him Sing Chong & Co. et al.* case, *supra*, and three of which are involved here. The *Fook Wo Tong Co.* case, *supra*, was decided by the same division (Third) as the *Him Sing Chong & Co. et al.* case, *supra*, and both opinions were by Evans, J. In the first, the products were held classifiable as drugs crude, while in the last some were held classifiable as drugs advanced and others as vegetables. Thus we observe conflicts in conclusions just as conflicts have occurred in decisions of this court as later will appear. It must be borne in mind, however, that each case had to be tried upon its own testimonial record and in the light of the claims advanced. Largely as a result of these conflicting decisions, the administrative practice has varied from time to time.

It seems appropriate to say at this point that, according to the record in this case and to the opinions in the numerous cases of a generally similar nature which we have examined, there are many varieties of Chinese products which seemingly are closely akin to those at bar, but known by different names. It really appears that in rendering the Chinese characters, by which the products are named, into English equivalents, the spelling of the name of the same product is not always the same. For example, "pak hop" seems to be known also as "bak hop." It was so spelled in a table given in the decision in the *Him Sing Chong & Co. et al.* case, *supra*. Also, we note that in that table lotus nuts were designated "Hoi pak lien," instead of "Hoi pak lin" as here. Apparently as synonyms of "Lien tsu" (germ of the lotus nut), the table gives "Lien shi" and "Lien jee."

Peculiarly enough, in view of the long period of time during which articles of the nature here involved have been imported (the *Him Sing Chong & Co. et al.* case, *supra*, embodied importations under both the 1913 and 1922 tariff acts), comparatively few cases have been before this court, and in these cases the claims have varied as did the testimonial records.

In the case of *Lee & Co.* v. *United States*, decided March 9, 1927, 14 Ct. Cust. Appls. 408, T. D. 42053, merchandise imported under the Tariff Act of 1922, described in our opinion as "A certain Chinese dried fruit, variously known as *loh hon gar*, *low hon quor*, *lo hon qua*, or simply *loh hon*," was held by this court, affirming the decision of the trial tribunal, to be classifiable under paragraph 749 of that act (predecessor of paragraph 752 of the 1930 act, *supra*) rather than as crude drugs under paragraph 1567 (predecessor of paragraph 1669, *supra*). From our opinion in the case it is apparent that the contest there was solely between paragraphs 749 and 1567, and that other paragraphs of the 1922 act, which were predecessors of certain of the

paragraphs here involved, were not considered. In the opinion we said:

The testimony on behalf of the importer is not sufficient, in our opinion, to overcome the presumption of correctness attaching to the collector's decision. The testimony is conclusive that *loh hon gar* is chiefly, if not solely, used as a medicine, but there was no evidence submitted by the importer which would justify us in holding that *loh hon gar* is not edible and unsuitable to be eaten. There are many fruits which have medicinal uses and which are used for medicinal purposes. Such fruits can be and are eaten as foods but the fact that they have a medicinal value does not justify their classification as inedible drugs.

The opinion does not state the manner in which nor the plant from which the commodity was produced, but recites testimony to the effect that it "had been dried and had not been otherwise processed." We had no occasion there to consider paragraph 34 of the 1922 act (predecessor of paragraph 34 of the 1930 act, *supra*) providing for drugs advanced in value or condition.

The case of *Tong & Co.* v. *United States*, decided May 19, 1927, 15 Ct. Cust. Appls. 153, T. D. 42218, involved a product known as *mok kar*, sometimes called *mok kwar*. The description of it accepted by counsel on both sides was as "a fruit split and dried, probably a fruit of the pear family." It was classified by the collector under paragraph 749 of the 1922 act, as was the merchandise in the *Lee & Co.* case, *supra*. The importer claimed under paragraph 1567, or, in the alternative, under paragraph 34 of the 1922 act (predecessor of paragraph 34 of the 1930 act, *supra*). The trial tribunal sustained the classification of the collector. This court reversed the decision and held the merchandise classifiable under paragraph 1567 as drugs in a crude state, saying *inter alia:*

It appears that this *mok kar*, in its imported condition, has been split and dried only. While there is no precise evidence upon the question whether it has been advanced in condition beyond that essential to the proper packing of the drug and the prevention of deterioration, we think it may well be presumed from the fact that it has only been split and dried that it is in a crude state within the meaning of paragraph 1567. In this respect the case is much like *Tong* v. *United States*, 12 Ct. Cust. Appls. 32, in which we held that ginseng which had not been shredded, ground, chipped, crushed, or scraped, but had been dried and treated with sugar or honey was in a crude condition under paragraph 477 of the tariff act of 1913 which, in legal effect, so far as this issue is concerned, is not different from said paragraph 1567.

In the opinion there was no specific discussion of the question of the edibility of the commodity such as characterized the opinion in the *Lee & Co.* case, *supra*.

Superficially there would appear to be a conflict between the two last cited decisions. However, when both opinions are studied closely it will be found, we think, that the testimony relative to the use of the respective commodities so differed as to lead, under the rules of law which the court must follow, to the different conclusions reached.

In the case of *Doap Leun Hong Co.* v. *United States*, 19 C. C. P. A. (Customs) 313, T. D. 45481, we had before us *siu sit* (one of the commodities here involved) imported under the Tariff Act of 1922. There, as here, the collector's classification was under the paragraph (34 in both acts) providing for drugs advanced, and there, as here, the importer's claim was under the crude drugs paragraph 1567 in the 1922 act, predecessor of paragraph 1669 of the 1930 act). The fruit and vegetable paragraphs of the 1922 act, which were predecessors of paragraphs 752 and 775 of the 1930 act, were not there invoked by either party.

We sustained the importer's claim under paragraph 1567, thus reversing the decision of the trial court affirming the collector's classification.

The merchandise was there described as follows:

It appears from the testimony that the merchandise in issue consists of split and broken kernels of seed from a plant belonging to the water-lily family; that the seeds, while green, are cracked by a bamboo mill for the purpose of extracting the kernels from the hulls; that in such process the kernels are incidentally split or broken, and that there is no purpose, in the operation, of either splitting or breaking them, nor is there any advantage in their use in their being so split or broken.

We then added:

Clearly, the shell is no part of the drug. It is evident that the only purpose of the cracking process is to get the drug by itself. It has been uniformly held that such a process does not advance an article from its crude state. *United States* v. *Sheldon & Co.*, 2 Ct. Cust. Appls. 485, T. D. 32245. We do not deem it necessary to discuss further the question of whether merchandise, which has undergone such a process as the testimony in this case reveals, is advanced, for this precise question was decided in the negative by this court in the case of *Tong & Co.* v. *United States*, 15 Ct. Cust. Appls. 153, T. D. 42218, wherein it was held that a certain Chinese drug, known as *mok kar*, should be classified as a crude drug, it being shown that nothing had been done to it except splitting and drying.

It will be borne in mind that the collector's classification there was under paragraph 34 as drugs advanced. We held, in effect, that there was no evidence sufficient to overcome the presumption of correctness of the holding that the merchandise was a drug, but that there was evidence which overcame the presumption that it had been advanced in value or condition from the state of crudity defined for drugs in paragraph 1567.

The question of "edibility" did not enter into our consideration of the last case cited, no issue as to that having been presented.

From the foregoing review of the three cases decided by this court, it appears that in the first (*Lee & Co., supra*) we overruled the importer's protest and denied the merchandise classification as crude drugs because the importer had failed to overcome the presumption of correctness attaching to the collector's classification by showing the article to be non-edible; that in the second (*Tong & Co., supra*)

the importer's protest was sustained because it was thought he met the burden, and that in the third (*Doap Leun Hong Co., supra*) the protest was sustained because the presumption as to its being drugs advanced in value or condition from the crude had been overcome.

In the light of the foregoing decisions of this court and of the United States Customs Court, and upon the testimonial record and exhibits presented, we proceed to the consideration of the several issues presented in the instant case.

Considering, first, the issue limited solely to drugs advanced and drugs crude (a matter not considered in the *Lee & Co.* case, *supra*), and disregarding for the time the element of edibility, we are clearly of the opinion that the merchandise at issue here is in the same relative condition as was the merchandise in the *Tong & Co.* and *Doap Leun Hong Co.* cases, *supra*. Upon the testimonial record and in the light of the samples, we regard the involved nuts or seeds, fruits and lily bulb scales, if they fall within the designation of drugs at all, as being crude. The authorities cited in those cases we deem sufficient upon this point.

As we interpret the brief and oral argument of Government counsel before us, while they do not abandon the collector's classification, they do not seriously insist that the merchandise is, in fact, drugs either advanced or crude. The gravamen of their contention is that the fruit is classifiable under paragraph 752, *supra*, and the nuts, or seeds, and lily bulb scales under paragraph 775, *supra*, it being argued that all are edible and hence denied classification as drugs. The claim is further that paragraphs 752 and 775 more specifically describe the merchandise than does paragraph 1722 under which appellant claims alternatively.

These contentions we now consider.

It should be made clear that the burden of sustaining the claims under paragraphs 772 and 775 rests upon the Government. The presumption with which we must begin is that of the correctness of the collector's classification. This presumption so far as it applies to the "advanced" condition of the commodities, in our opinion, has been overcome, but the presumption that they are drugs still obtains. *Doap Leun Hong Co.* v. *United States, supra*.

To sustain its claims the Government relies, first, upon the manner in which the commodities are used, and, second, upon the testimony of certain witnesses relative to their use, or suitability for use, as food.

It is insisted that the several commodities are used in making a soup called luk mei. Such is the testimony of the importer's witnesses, as well as that of witnesses called by the Government, but it is noted that in every instance the witnesses of the Chinese race distinctly referred to the commodities as medicinal in character, and the soup containing these ingredients, along with others (it seems to contain

six products), is usually prepared in Chinese drug stores and sold to Chinese customers or to Chinese grocerymen who in turn sell it to their customers. We think it clear from the record that the Chinese portion of the country's population are the only regular users of the merchandise. It may also be remarked that, so far as the record discloses, the commodities have never been produced in the United States except one or two of them in an experimental way.

It is not deemed necessary to set forth in detail the evidence introduced on behalf of the importer.

In the *Him Sing Chong & Co. et al.* case, *supra*, wherein were involved many commodities, including all four of those here involved, there was an extensive testimonial record. After reviewing all the evidence the Customs Court said:

> The preponderance of the foregoing testimony undoubtedly is to the effect that the chief use of all of these commodities by the only persons who do make any substantial use of them, to wit, the Chinese people, is as a drug, in the preparation of what might be called a home remedy known as luk mei. Medicinal attributes have been ascribed to each of the commodities involved by a reputable American-born Chinese physician who has testified to having used each of the articles for curative purposes in the practice of his profession.
>
> None of the Government witnesses has denied that these commodities are used in the making of luk mei. Some of them have given testimony corroborating this use.

The foregoing is apropos the present case. There was no testimony here by a physician, but one of appellant's witnesses was a Chinese druggist and another was a Chinese student at the University of California who testified that he holds the degree "Bachelor's in pharmaceutical chemistry and Master's at Oregon State." There is nothing of record to indicate that these witnesses are not entirely reputable. We are of opinion that the testimony of all the Chinese witnesses justifies the conclusion that the luk mei soup is not used as a regular diet but for medicinal purposes.

The Government introduced the testimony of a Chinese cook upon one of the Dollar Line steamships. This testimony is not particularly helpful to either party in the case, but it is to the effect that he never made luk mei soup on board ship; that "Europeans never eat luk mei soup, only in China"; that he sometimes made it in China; that he had seen Chinese people eat it in San Francisco sometimes; that "It tastes good for health, like it is good for health" and that it is taken as a medicine. He testified through an interpreter and there are some minor contradictions in his evidence.

Another witness called on behalf of the Government was a Mrs. Zipporah Trenkle, a housewife and a registered nurse. The substance of her pertinent testimony was that she prepared and cooked a mixture of *hoi pak lin, pak hop* and *siu sut:* that she ate probably

half a cup or more of it; that she noticed no harmful effect after taking it; had no reaction; found the lotus nut very pleasing; the other two "sort of flat, but could be used as food."

The witness stated she had had much experience as a dietitian in hospitals but was not very familiar with drugs.

On cross-examination she stated that the episode of cooking the mixture of the commodities was an experiment carried out a few days before her testimony was given.

The testimony upon which the Government seems principally to rely is that of Dr. Walter C. Blasdale (testimony seemingly principally relied upon by the trial court in the *Him Sing Chong & Co. et al.* case, *supra*), professor of chemistry at the University of California, given in another case but, by stipulation, included as a part of the record in this case, together with a publication (Exhibit 34) entitled "A Description of Some Chinese Vegetable Food Materials, and Their Nutritive and Economic Value," prepared by Dr. Blasdale, assisted by others connected with the University, and published in 1899 by the United States Department of Agriculture as Bulletin No. 68. This publication was admitted by consent of counsel for the importer.

In an appendix to the Government brief the testimony of Dr. Blasdale is summarized as follows:

He testified that he grew in his own garden in California pak hop, which he identified as "*lilium brownii*," and as a result of his experiments ascertained that it was not only edible but "desirable additions to our dietary"; that he gave a dinner to some of his friends at which he served a few Chinese articles, among which was pak hop, and all of them were voted to be "entirely desirable things to use in the form of vegetables." His finding with reference to pak hop will be found at pages 19–22 of Exhibit 34. He analyzed them from a food chemist's point of view to determine the nutritive value of each. He identified hoi pak lin which he described as lotus seeds, the specific name of which is "*nelumbium speciosum*" which he grew in his garden and which he ate and his friends ate; ate them raw and ate them cooked. The analysis of these as to their food value is given at page 41 of Exhibit 34. He ate siu sut and identified it as a member of the "*euryale ferox*" family, see also page 40 of Exhibit 34. Yuen yuk he identified as "*longan*" and is referred to at page 43 of Exhibit 34. The latin terminology is "*nephclium longan*."

It may be said that in the *Doap Leun Hong Co.* case, *supra*, we were asked to take judicial notice of and consider the pamphlet prepared by Dr. Blasdale as an official Government publication, but it was the view of the majority of the court that we might not do so, it not having been offered in evidence.

It was placed in evidence here and we have examined it with much interest and care. In it are analyses of many Chinese products, including some of those at issue, with reference to their food values. It is sufficient to say that in practically all of them, food values were stated to exist. However, there is no showing that there was any

habitual use of them for food purposes by any one. For example, it is noted that in the discussion of lily bulbs, Dr. Blasdale states, *inter alia:*

The Chinese regard lily bulbs more as a delicacy than as a standard article of diet, and the customary price is considerably above that of other vegetables in common use by them. A Japanese friend informed the author that they are regarded by the Japanese as an especially desirable food for invalids and convalescents. When used for this purpose the bulbs are only slightly cooked and are eaten after the addition of sugar.

The bulbs sold in San Francisco, so far as the author's observations go, are nearly devoid of the bitter principle which is reported to occur in several species of Lilium. When simply boiled, they form a palatable food, and Americans might doubtless soon become accustomed to their use. * * *.

In the discussion of "Sacred Lotus" we find the following:

The uses of the lotus are numerous and varied. The stamens are employed in China as an astringent remedy and also for the toilet; the petioles and peduncles furnish a viscous sap employed in India as a remedy for vomiting and diarrhea; the fibrovascular bundles of the petioles are made into lamp wicks and the carpophore furnishes a popular remedy for blood spitting. The seeds contain a white starch used largely as food (see p. 39); roasted and ground they served the Egyptians for the manufacture of a kind of bread; in China they are used in soup and also as a remedy for indigestion. They are supposed to have invigorative properties when used as food by convalescents. The Chinese also extract from the root a starch which they say is very strengthening. A decoction of the rhizomes is used as a remedy for intestinal inflammation and the rhizomes themselves also become an important article of food in times of famine.

It is proper to say that, as is shown by the introduction to Dr. Blasdale's pamphlet, he became interested as a scientist in studying numerous Chinese plants, fruits, etc., with particular reference to their food values and did make studies of large numbers. As to many, the suggestion was offered in the pamphlet that they could be grown in this country, but, so far as the record discloses, this has not been attempted, although the pamphlet was published about thirty-eight years ago. Except in the cases of *pak hop* and *hoi pak lin*, which Dr. Blasdale grew experimentally in his garden, there is nothing in the record to indicate that any effort has ever been made to produce any of the commodities here at issue in this country.

We have then this situation: The testimony establishes that among those who use the products at issue they are regarded as medicinal in character and are chiefly used for medicinal purposes and no vegetable use of them is shown except perhaps in two instances where purely experimental trials were made by persons who do not claim to use the articles regularly or habitually.

In the case of *Sheldon & Co. et al.* v. *United States*, 12 Ct. Cust. Appls. 474, T. D. 40671, this court held certain products of the carob tree consisting of fleshy pods with small seeds or beans inside, known as "Saint John's bread," or "locust beans," to be classifiable as a raw,

unmanufactured article not enumerated or provided for, rather than as fruits under paragraph 749 of the Tariff Act of 1922. There was a claim in that case under the crude drug paragraph, but we found "There is nothing in the record which tends to show that it is ever used as a drug," and for reasons there stated, it was found not to fall within any other of the free paragraphs of the act. There was evidence in that case of some use of the product as a confection, and the purpose of citing it here is because of the statement in the opinion:

Neither does its very *limited* use as a confection justify its classification under paragraph 772 as a vegetable in its natural state. [Italics new here.]

The rule that exceptional or incidental use does not control classification is one of long standing. *Kahlen* v. *United States*, 2 Ct. Cust. Appls. 206, T. D. 31947; *Richardson Co.* v. *United States*, 8 Ct. Cust. Appls. 179, T. D. 37289; *Decorated Metal Manufacturing Co.* (*Inc.*), *an American Manufacturer* v. *United States and Pickfords Colonial* (*Inc.*), 12 Ct. Cust. Appls. 140, T. D. 40061; *United States* v. *James Heffernan Paper Co.*, 17 C. C. P. A. (Customs) 61, T. D. 43358; *United States* v. *American Brown Boveri Electric Corporation*, 17 C. C. P. A. (Customs) 329, T. D. 43776. This group of cases did not involve merchandise of the kind at bar and they are cited merely as illustrative of the application of the rule named.

We have been at some pains to study many cases wherein merchandise of the type here at issue has been involved to the end that, so far as is possible upon the record before us, a decision may be rendered which we hope may clarify the confused situation which seems now to exist relative to the proper classification of such merchandise.

Without, of course, attempting any adjudication to that effect, it may be said that we seem to have before us here all the paragraphs of the Tariff Act of 1930 under which claims might reasonably be made.

Importer has an alternative claim, as has been stated, under paragraph 1722, *supra*, and we have considered that. Were the contest solely between that paragraph on the one hand and paragraphs 752, *supra*, and 775, *supra*, upon the other, we should incline to the view of the trial court that the merchandise falls under 1722 as "vegetable substances, crude, or unmanufactured, not specially provided for." This view is based in large part upon observation of the samples, and a consideration of articles which are commonly thought of as fruits and vegetables, together with an examination of the types which actually have been held classifiable as such by the courts.

Upon consideration of the testimony in this case together with the samples in the light of the judicial decisions cited, however, we are convinced that the articles respond fully to the provisions of paragraph 1669, *supra*. It is true that one of the requirements of that paragraph is that the articles shall not be edible, and it is proven here that the products have been eaten without any deleterious effects.

This fact, however, in view of all the testimony, does not seem to us to remove them from the paragraph. Many articles whose drug character is indisputable doubtless can be eaten in moderation without deleterious results. The word edible, we think, must be given its common meaning and construed in the sense of its ordinary use and acceptance. Webster's New International Dictionary gives the adjective meaning of the word as "Fit to be eaten *as food*; eatable; esculent; as, *edible* fishes." [First italics ours.]

The definitions by other authorities are of the same purport. That given by the Century Dictionary and Encyclopedia reads:

*Edible*—1. a. Eatable; fit to be eaten as food; esculent; specifically applied to objects which are *habitually* eaten by man, or *specifically* fit to be eaten, among similar things not fit for eating; as edible birds' nests; edible crabs; edible sea-urchins. * * * [Italics new here.]

In view of the use which is shown of the products here involved, we do not regard them as being edible in the common and usual understanding of that term.

We hold the merchandise classifiable under paragraph 1669, and the judgment of the United States Customs Court is *affirmed.*