(C. D. 608)

AMERICAN HEAT RECLAIMING CORP. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided April 1, 1942)

*Siegel & Mandell (Joshua M. Davidson* of counsel) for the plaintiff.
*Paul P. Rao,* Assistant Attorney General (*Joseph A. Howard, Jr.,* special attorney), for the defendant.

Before TILSON, KINCHELOE, and DALLINGER, Judges

DALLINGER, Judge: This is a suit against the United States, arising at the port of New York, brought to recover certain customs duties alleged to have been improperly exacted on a particular importation invoiced as "one spiral heat exchanger." Duty was levied thereon at the rate of 45 per centum ad valorem under paragraph 397 of the Tariff Act of 1930 as a manufacture of metal not specially provided for. It is claimed that said merchandise is properly dutiable at the rate of 27½ per centum ad valorem under paragraph 372 of said act as a machine or parts thereof not specially provided for.

A photograph of a spiral heat exchanger like the one here imported was admitted in evidence herein as illustrative exhibit A; an illustration on page 3 of a pamphlet entitled "The Spiral Heat Exchanger" showing a cross-section of a spiral heat exchanger like that here imported was admitted in evidence as illustrative exhibit B; and two colored illustrations thereof, shown on page 4 of said pamphlet, were admitted in evidence as illustrative exhibit C.

215

In addition to said exhibits, the plaintiff offered in evidence the testimony of Claes Emil Creutz, vice president and general manager of the plaintiff-corporation and a qualified mechanical engineer, who testified in part as follows:

Q. Will you tell the court the function of that particular spiral heat exchanger? —A. This spiral heat exchanger is driven through force through which heat is exchanged from one medium to another. If I can take an example: one liquid or other material having a high temperature and another material with a low temperature, they come in contact with each other, and due to the force which is applied to this spiral heat exchanger when the liquid flows through the spiral heat exchanger, due to the force that is applied to the said liquor a turbulence is created and that causes the transfer of heat from the one medium to the other. The media flows through separate compartments formed by the plates, and the heat from the delivery medium is absorbed by the other medium.

\* \* \* \* \* \* \*

Q. Will you please, Mr. Creutz, using figure 2, Illustrative Exhibit C, tell the court the nature of the construction of that spiral heat exchanger? \* \* \*?— A. The construction consists of two plates rolled up into spirals, creating two compartments, one on each side of the plates.

\* \* \* \* \* \* \*

Q. Using Illustrative Exhibit A, B, or C, will you please explain to the court the manner in which the heat is transferred from one medium to the other by means of the spiral heat exchanger, using as far as possible the letters of the alphabet, starting with the letter "A"?—A. The hot medium enters the heat exchanger in the one shown on page 4, at the center which is marked A.

Q. That is marked with the letter "A?"—A. Yes. The media flows, due to force applied to the media, in one of the compartments formed by these spiral plates ——

Judge Dallinger. You are speaking about force being applied. Where does that force come from?

The Witness. The force comes from outside the spiral heat exchanger, either through a pump or by gravity.

\* \* \* \* \* \* \*

A. [continuing] The hot medium leaves the heat exchanger at the periphery, marked "B." The cool medium which absorbs the heat enters the heat exchanger at the periphery, marked "C," and flows contracurrent to the hot medium, and leaves at the center, marked "D."

By Mr. Davidson.

Q. While the hot water is going through the heat exchanger in one direction, and the cold water is going through the heat exchanger in another direction, what takes place?—A. When the hot medium as well as the cool medium flows through the heat exchanger, due to the change in direction and on account of this spiral flow, it sets up a turbulence in the liquor which has the effect of decreasing the film which is created on the surface of the plates, and when the film decreases, the heat transfer between the two media increases.

Q. In other words, the faster that this liquor, or the hot water and the cold water, goes through the heat exchanger, the heat transfer between the media increases; is that correct?—A. Yes.

Judge Kincheloe. Does the hot and cold water come in contact with each other in that heat exchanger?

The WITNESS. They don't come in contact with each other. They are separated by the spiral plates; they flow on each side of the plates.

\* \* \* \* \* \* \*

By Mr. DAVIDSON.

Q. What is the purpose of that particular spiral heat exchanger?—A. In most cases, the purpose is to recover waste heat, either from waste liquor, waste steam or gas, or a mixing of steam and gas.

\* \* \* \* \* \* \*

Q. In what industries, principally, are these spiral heat exchangers used?—A. This spiral heat exchanger has been applied in almost all chemical industries, principally, however, in the pulp industry and sugar industry, and by some in the sulphuric acid industry.

Q. And the purpose in all cases is to reclaim waste heat?—A. In most cases, yes. \* \* \*

On cross-examination the witness testified in part as follows:

X Q. Mr. Creutz, assuming that both of the media entered this heat exchanger in the same condition, they would come out the same way, isn't that right?—A. You mean if they are the same temperature, yes.

X Q. In other words, the article, itself, doesn't contain any heating element?—A. The article contains a heating element, but doesn't create any heat.

\* \* \* \* \* \* \*

X Q. It contains nothing that will raise the temperature of any of the media?—A. Not the apparatus itself.

\* \* \* \* \* \* \*

X Q. There is nothing in the article, itself, by which you can control the pressure or the rate of flow?—A. Not inside the article, no.

\* \* \* \* \* \* \*

X Q. Conduction, radiation, and convection, all three methods by which heat travels, take place in the imported article?—A. Yes.

X Q. Of course, those three methods by which heat travels are natural physics laws, are they not?—A. Yes.

X Q. And that is all that happens in the imported article, is it?—A. Yes.

On redirect examination the witness testified in part as follows:

R Q. In your opinion, as a practical engineer and also as a scientific engineer, Mr. Creutz, would you say that this heat exchanger is a mechanical contrivance?—A. I would.

R Q. Would you also say there was a transfer of energy in this heat exchanger?—A. Most certainly.

R Q. Would you also say that that transfer of energy is caused by a certain motion or force applied to it?—A. That's right.

\* \* \* \* \* \* \*

R Q. So that would you say there is a utilization or application of some energy or force from one medium to another to obtain the desired effect?—A. That's right.

On recross-examination the witness testified in part as follows:

R. X Q. Will you tell the court why you call the imported article a mechanical device?—A. I think it is rather hard to answer that question. According to my knowledge, it is a mechanical device. But as far as I can see, it is very hard to draw any definite line between a mechanical device and a machine.

\* \* \* In the engineering school, we call some kind of an apparatus through which energy is forced or changed from one type to another a mechanical device, and in the heat exchanger energy is forced through the elements, and the energy is changed from one form to another. We have heat and heat is a form of energy, and we have that form of energy changed to hot water or from one entropy, a higher entropy, to a lower entropy.

Upon this record we are satisfied that the so-called spiral heat exchanger constituting the imported merchandise at bar is not a mechanical contrivance as that term is used in the definition of a machine set forth in the case of *Simon, Buhler & Baumann (Inc.)* v. *United States*, 8 Ct. Cust. Appls. 273, T. D. 37537. The present merchandise merely serves as a convenient method of placing a heat medium in close proximity to a cool medium in order that the heat from one may be transferred to the other.

In *United States* v. *Race Co.*, 22 C. C. P. A. 327, T. D. 47362, in holding certain so-called dialysers, consisting of large metal tanks equipped with wire grids, wire mesh nets, cotton bags or diaphragms, and the necessary fittings and connections, and used for the extraction of pure caustic soda from a solution of impure caustic soda, not to be classifiable as machines under paragraph 372 of the Tariff Act of 1930, the appellate court said:

We have, on several occasions, indicated that the language in the *Simon, Buhler & Baumann* case, *supra*, must be given a reasonable meaning and not be too strictly and closely construed. *United States* v. *Reid, United States* v. *Klingerit, United States* v. *McNab, supra; United States* v. *Stern & Co.*, 21 C. C. P. A. (Customs) 246, T. D. 46777. See also *United States* v. *Laing, etc.*, 21 C. C. P. A. (Customs) 235, T. D. 46763.

For instance, the mash filter in the *Simon, Buhler & Baumann* case, *supra*, might be said to utilize the force of gravity, the separators in *United States* v. *Reid & Co.*, *supra*, might be said to utilize force, the valves in *United States* v. *Klingerit, supra*, might be said to modify energy, and the torsion meter in *United States* v. *McNab, supra*, might technically be said to utilize energy or force. But they were not such "mechanical contrivances," as, in the mind of the court, came within the meaning of the word "machine" as was announced in the *Simon, Buhler & Baumann* case, *supra*.

Are the dialysers before us here such machines? We think not. They constitute only receptacles in which the force of osmosis is permitted to operate. They are no more than a tank in which a membrane is suspended, separating a body of clear water and a body of impure caustic soda in solution. That osmosis is a force cannot be doubted, but so is gravity, and chemical affinity, and catalysis, and condensation. *Certainly, however, a tank or container in which these natural forces are permitted to operate, without mechanical manipulation or assistance, does not raise such a tank or container to the dignity of a machine.* [Italics ours.]

In the present case certain "natural forces are permitted to operate" as a result of which heat from one medium is transferred to another "without mechanical manipulation or assistance." The mere operation of the natural forces of conduction, radiation, and convection does not raise the tank in which they are permitted to operate to the dignity of a machine.

We have carefully examined the cases cited by counsel for the plaintiff in their brief filed herein and are satisfied that none of them has any application to the facts in the instant case. Particularly is this true of the decision in *Todd Shipyards Corp.* v. *United States*, Abstract 25031, 64 Treas. Dec. 853, wherein the merchandise consisted of certain "cast steel boxes, steel bends, a relief valve, and other parts of a complete heating system." There the court simply held that the involved articles were parts of a complete mechanical contrivance. But there is no evidence that the instant spiral heat exchanger forms part of a larger mechanism.

Upon the established facts and the law applicable thereto we hold that the spiral heat exchanger involved herein is properly dutiable at the rate of 45 per centum ad valorem under said paragraph 397 as a manufacture of metal not specially provided for, as alleged by the collector. All claims are therefore overruled and the decision of the collector is affirmed. Judgment will be rendered accordingly.