BEFORE THE SECOND DIVISION, MAY 10, 1961

**No. 65600.**—Rosenblad Corp. *v.* United States, protest 59/6751 (Philadelphia).

LAWRENCE, Judge:   An importation of spiral heat exchangers was classified by the collector of customs as articles in chief value of metal in paragraph 397 of the Tariff Act of 1930 (19 U.S.C. § 1001, par. 397), as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108, and duty was imposed thereon at the rate of 21 per centum ad valorem.

Plaintiff claims that the articles should be classified as machines or as parts thereof in paragraph 372 of said act (19 U.S.C. § 1001, par. 372), as modified, *supra*, and dutiable at the rate of 13 per centum ad valorem.

Plaintiff concedes, in its brief, that identical merchandise has been the subject of prior litigation in this court, pointing out that:

In *American Heat Reclaiming Corporation v. United States*, 8 Cust. Ct. 214, C.D. 608 (1942) such merchandise was held not to be a machine per se.

In *Fibre Making Processes Inc. v. United States*, 14 Cust. Ct. 98, C.D. 920 (1945) such merchandise was held to be a part of a machine for making paper pulp. On appeal, the judgment was reversed. *United States v. Fibre Making Processes Inc.*, 33 C.C.P.A. (Customs) 110, C.A.D. 323 (1946) (Suit 4515).

Upon motion of the Government and without objection by the plaintiff, the record in the *Fibre Making Processes, Inc.*, case which included, by way of incorporation, the record in *American Heat Reclaiming Corp.*, was incorporated herein.

The pertinent text of the statutes involved herein is here quoted:

Paragraph 397 of the Tariff Act of 1930, as modified, *supra*:

Articles or wares not specially provided for, whether partly or wholly manufactured:
    Composed wholly or in chief value of platinum
          *        *        *        *        *        *
    Composed wholly or in chief value of iron, steel, copper, brass, nickel, pewter, zinc, aluminum, or other base metal (except lead), but not plated with platinum, gold, or silver, or colored with gold lacquer:
        *     .   *        *        *        *        *        *
        Not wholly or in chief value of tin or tin plate:
            Carriages, drays, trucks, * * *
                *        *        *        *        *        *
            Other, composed wholly or in chief value of iron, steel, brass, bronze, zinc, or aluminum * * *_____ 21% ad val.

Paragraph 372 of said act, as modified, *supra*:

Machines, finished or unfinished, not specially provided for:          * * *
    Adding machines
       *        *        *        *        *        *        *
    Other * * *                              13% ad val.
Parts, not specially provided for, wholly or in chief value of metal or porcelain, of any article provided for in any item 372 in this Part.    The rate for the article of which they are parts.

At the trial, the only witness in the case was James J. Sheridan, who was called by plaintiff. Sheridan stated that he is an executive of the American Heat Reclaiming Corp. and a director of the Rosenblad Corp., the plaintiff herein. His knowledge of the construction, character, function, and uses of the subject merchandise was established and his testimony stands unrefuted. He identified the heat exchangers in controversy as type 1 and type 3, which are illustrated on page 2 of a pamphlet received in evidence as exhibit 1. Sheridan testified to the wide use of heat exchangers in various industrial plants, in sulphate pulp mills, in the chemical industry, in gas and coke plants, aluminum plants, in textile mills, in sugar factories, in central heating, and various other plants. From the testimony of Sheridan, it appears that spiral heat exchangers are so constructed that a warm fluid and a cooler fluid flow throughout the apparatus in separate passages, in a circular, spiral motion, one liquid flowing inward while the other flows outward, there being a common wall between them for the transfer of heat.

For a brief and illuminating explanation of the spiral heat exchangers, we turn to page 2 of exhibit 1, which was evidently printed under the aegis of Rosenblad as follows:

The Rosenblad Spiral Heat Exchanger

    —ideal for heating and cooling liquids and for cooling and condensing vapours or gas-vapour mixtures.

    The spiral heat exchanger consists essentially of two plates, normally of stainless steel, wound round each other in a spiral so as to form two concentric passages, one for each of the two media between which heat is to

be exchanged. The hot medium enters at the centre of the unit and leaves at the periphery: the cold medium enters at the periphery and leaves at the centre. Heat exchange thus takes place under perfect counter-current conditions.

Under the heading "Heat exchanger for two liquids," the following appears:

As may be seen from the diagram, the two liquids are kept completely separate, since the two passages are sealed by welding at opposite ends. This completely eliminates the possibility of leakage from one channel to the other, even if the packing between the spiral body and the cover should be damaged.
In the great majority of cases the unit requires no special insulation, since the colder liquid enters at the periphery in the outer passage. This is also true of types 2 and 3. ["Cross-flow type condenser" and "Condenser for vapour or vapour-gas mixture," respectively.]

As stated earlier in this opinion, plaintiff concedes that identical merchandise has been the subject of prior litigation not only in this court but in our appellate court. In *American Heat Reclaiming Corporation, supra,* such merchandise was held not to be machines, and, in *Fibre Making Processes, Inc., supra,* the appellate court, in reversing this court, held that such spiral heat exchangers were not parts of a papermaking machine. The court was of the opinion that while the heat exchangers in the latter case were for the sole purpose of use in a pulp making plant, they served merely as an auxiliary heating apparatus, heat being transferred by means of spiral plates, and that they could not be properly regarded as an integral part of a pulp or papermaking machine.

Plaintiff contends, in its brief, that the heat exchangers are used in some cases "for purposes of economy, but in the majority of its application it is a necessary adjunct to such operation."

In support of its contention that the spiral heat exchangers are machines, *per se,* plaintiff, in its brief, cites numerous decisions of this court and our appellate court in an effort to outline a workable definition of the tariff meaning of the term "machine," pointing out that:

The definition most frequently stated in such cases is that a machine is a mechanical contrivance for utilizing, applying, or modifying energy or force or for the transmission of motion. The case most frequently cited, and seemingly the leading authority is *Simon Buhler & Baumann Inc.* v. *United States,* 8 Ct. Cust. Appls. 273, T.D. 37537 (1918).

The *Simon, Buhler & Baumann (Inc.)* case was decided more than 40 years ago and is the lodestar on the subject. It has been distilled, modified, and tailored to fit the circumstances in a long line of cases, many of which have been cited by plaintiff and examined by the court.

We have also examined the records and opinions in *American Heat Reclaiming Corp.* and *Fibre Making Processes, Inc.,* wherein spiral heat exchangers were the subject of controversy, and we find nothing of a factual or legal concept which induces us to depart from our reasoning in the *American Heat Reclaiming Corp.* case, *supra.* That case was decided 19 years ago. The testimony quoted in the decision in that case presents, in our opinion, an instance of similarity of function and uses of the heat exchangers in that case with those now before us.

For the reasons above stated, we overrule the protest on all grounds, and judgment will issue accordingly.