ROSENBLAD CORP. *v.* UNITED STATES    (No. 5084)*

United States Court of Customs and Patent Appeals, April 11, 1962

*(C.A.D. 800)

*John D. Rode* for appellant.

*William H. Orrick, Jr.*, Assistant Attorney General, *Richard E. FitzGibbon*, Chief, Customs Section (*Richard H. Welsh*, trial attorney, of counsel) for the United States.

[Oral argument February 9, 1962, by Mr. Rode and Mr. Welsh]

Before WORLEY, Chief Judge, and RICH, MARTIN, and SMITH, Associate Judges, and Judge WILLIAM H. KIRKPATRICK.[1]

SMITH, Judge, delivered the opinion of the court:

The United States Customs Court, Second Division, overruled the protest of the importer and sustained the action of the Collector of Customs assessing duty on certain imported "Spiral Heat Exchangers" at the rate of 21% ad valorem under paragraph 397, Tariff Act of 1930, as modified by the Sixth Protocol to the General Agreement on Tariffs and Trade (T.D. 54108) as manufactures of metal, not specially provided for.

The importer contends that the imported merchandise was properly dutiable at 13% ad valorem under paragraph 372 as modified by the above said Protocol, as machines or, alternately, as parts of machines.

Paragraph 397 as modified, under which the merchandise was classified provides, in so far as applicable here, as follows:

Articles or wares not specially provided for, whether partly, or wholly manufactured: * * * Composed wholly or in chief value of iron, steel * * *_____ 21% ad val.

Paragraph 372 as modified, under which the merchandise is claimed by appellant to be properly classified provides, insofar as applicable, as follows:

Machines, finished or unfinished, not specially provided for: * * * Other * * *_____ 13% ad val.

\*        \*        \*        \*        \*        \*        \*

Parts, not specially provided for, * * * The rate for the article of which they are parts.

The imported merchandise consists of spiral heat exchangers of two types illustrated in a pamphlet, Plaintiff's Exhibit 1.

The pamphlet describes the spiral heat exchangers as follows:

The Rosenblad Spiral Heat Exchanger—ideal for heating and cooling liquids and for cooling and condensing vapours or gas-vapour mixtures.

The spiral heat exchanger consists essentially of two plates, normally of stainless steel, wound round each other in a spiral so as to form two concentric passages, one for each of the two media between which heat is to be exchanged. The hot medium enters at the centre of the unit and leaves at the periphery: the cold medium enters at the periphery and leaves at the centre. Heat exchange thus takes place under perfect counter-current conditions.

---

[1] United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate *in place of Judge O'Connell*, pursuant to provisions of Section 294(d), Title 28, United States Code.

The pamphlet further describes three main types of spiral heat exchangers, two of which, types 1 and 3, make up the imported merchandise. The principle of operation of all three types is the same and they are identical for tariff classification purposes.

Such heat exchangers have widespread use in various industries, such as the cellulose industry, in sulphate pulp mills, in the chemical industry, in gas and coke plants, aluminum plants, in textile mills, in sugar factories, in canneries and in central heating and steam boiler plants.

In any installation the imported heat exchangers are used to transfer heat between two fluids.

Spiral heat exchangers of the type here in issue have been involved in prior litigation in which their classification for customs purposes was in issue. The record of *United States* v. *Fibre Making Processes, Inc.*, 33 CCPA 110, C.A.D. 23, one of the prior cases, is incorporated in the record of the instant case. Incorporated in the record of the *Fibre Making Processes* case, is the record of another case, *American Heat Reclaiming Corp.* v. *United States*, 8 Cust. Ct. 214, C.D. 608.

In *American Heat Reclaiming Corp.*, supra, a spiral heat exchanger of the type here in issue was held not to be a machine or parts thereof n.s.p.f. under paragraph 372, but to be a manufacture of metal n.s.p.f. under paragraph 397.

In *United States* v. *Fibre Making Processes, Inc.*, supra, this court, reversing the judgment of the United States Customs Court, held that a spiral heat exchanger was properly classified as a manufacture of metal under paragraph 397 and not as parts of machines for making paper pulp or paper under paragraph 372.

The court below, (Abstract 65600), in overruling the instant protest, stated that nothing of a factual or legal concept was found in the instant record which would induce it to depart from its reasoning in the *American Heat Reclaiming* case, supra.

An examination of the evidence in the record discloses, as outlined in appellee's brief:

1) that the spiral heat exchanger consisted of 2 plates rolled up into spirals, creating 2 compartments, one on each side of the plates;

2) that one liquid having a high temperature flows through one compartment and another liquid having a lower temperature flows through the other;

3) that the force behind the liquid comes from outside the spiral heat exchanger, either through a pump or by gravity;

4) that the two liquids are completely separate;

5) that the hot liquid enters at the center of the unit and leaves at the periphery;

6) that the cold liquid enters at the periphery and leaves at the center;

7) that when the hot liquid and the cold liquid flow through the heat exchanger due to the change in direction and the spiral flow, heat from the hot liquid is transferred to the cold liquid;

8) that there is nothing in the heat exchanger itself which will raise the temperature or control the pressure or rate of flow;

9) that is [sic] contains no heating element;

10) that conduction, radiation and convection are the methods by which the heat travels;

11) tha t all three of said methods are natural physical forces;

12) that for aught that appears in the record, said spiral heat exchangers contain no movable parts.

The question of what is and what is not a "machine" for purposes of classification in customs law has been before this court in numerous cases, in some of which an attempt at definition of the term has been essayed. In *Simon, Buhler & Baumann, (Inc.)* v. *United States*, 8 Ct. Cust. Appls. 273, T.D. 37537, a machine was defined as a "mechanical contrivance for utilizing, applying or modifying energy or force, or for the translation of motion." The Customs Court below stated that this case "is the lodestar on the subject."

A recent case in this court on the subject of machines is *United States* v. *Idl Mfg. & Sales Corp.*, 48 CCPA 17, C.A.D. 756, which involved two models of hand-operated paper punches, each containing two punching dies normally held open by a spring. The dies are closed to punch holes by the manual operation of a member which acts on the dies as a lever which multiplies the applied force. Actuation of the lever by hand to punch holes compressed the spring which opens the dies automatically when the pressure is released. Said punches were classified as manufactures of metal not specially provided for under paragraph 397, Tariff Act of 1930, as modified by T.D. 51802. They were claimed to be properly classifiable as machines not specially provided for under paragraph 372, Tariff Act of 1930, as modified by T.D. 51802. The Customs Court sustained the protest and the Government appealed. In sustaining the Customs Court, this court reviewed prior cases from which there had been evolved a so-called "definition of a machine," and said:

The state of the case law leads us to but one conclusion. While many items have been held to be, or not to be, "machines," there is no "judicial determination" of what a machine is. It remains simply a question of common meaning and each case must be decided on the basis of its own facts, technical and legislative.

In the present case the merchandise goes by the name of paper punching machines. It falls within the median definitions of "machine" to be found in dictionaries so that one need not apply an extreme definition to include these punches in the term. For example, the definition from Webster's New International Dictionary, referred to in the *Liang* case, supra, at p. 238 and the *Guth* case, supra, at p. 248, defines "machine" briefly as follows:

Any device consisting of two or more resistant, relatively constrained parts, which, by a certain predetermined intermotion, may serve to transmit and modify force and motion so as to produce some given effect or to do some desired kind of work; * * *.

The same appears in the latest (1956) edition.[2]  Footnote 4 of the *Idl* case is as follows:

■ Thus, before an importation can be said to respond to the term "machine," it must be something more than a crowbar, a pair of pliers, a kitchen colander, or a box of sand for cleaning water. *Simon, Buhler & Baumann, (Inc.)* v. *United States*, supra.  The machine Congress had in mind must have some movable parts and must do some of the things pointed out in the *Simon, Buhler* case, supra.  That is, it must utilize, apply, or modify force, or be used for the translation of motion.

The law as to what constitutes a machine, as pronounced by this court in *United States* v. *Idl Mfg. & Sales Corp.*, supra, is the same as it was in 1943 and 1945 when the cases of *American Heat Reclaiming Corp.*, supra, and *Fibre Making Processes Inc.*, supra, were decided.  Thus, factually, the involved spiral heat exchangers are not within the common meaning of the term "machine."  They clearly do not meet the prequisites laid down by this court in *United States* v. *J. E. Bernard & Co., Inc.*, 30 CCPA 213, C.A.D. 235, which prerequisites were expressly approved by this court in *United States* v. *Idl Mfg & Sales Corp.*, supra.  The involved spiral heat exchangers are nothing more than conduits in which certain natural forces are permitted to operate to the end that heat is transferred between streams of fluids flowing countercurrent in mechanically defined paths.

Appellant argues that the involved spiral heat exchangers are machines, and states: "The mere fact that the imported heat exchangers have no 'moving' parts is immaterial."  This contention was completely disposed of by this court in *United States* v. *J. E. Bernard & Co.*, supra, wherein it was said:

* * * It is our opinion that a machine such as Congress had in mind *must have some movable parts*, and it must do some of the things pointed out in the Simon, Buhler case.  We have so held in decisions hereinafter referred to.  [Emphasis added.]

---

[2] We add to the legal literature in this field the following definition, not previously noted in the opinions, from Hawkins' Mechanical Dictionary, published in 1909 by Theo. Audel & Co., New York:

*Machine.*—The word is most commonly applied to such pieces of mechanism as are used in the industrial arts, for mechanically shaping, dressing, and combining materials for various purposes; machines are frequently named from their use; as, screw cutting machines, or from the thing made or acted upon; as, machine ruler; compound machines are formed from two or more *simple machines.*  *Tools* are the simplest implements of art; these when they become complicated in their structure become machines, and machines when they act with great power, take the name, generally speaking, of *engines.*

*     *     *     *     *     *     *

Appellant contends as stated in its brief:

According to the undisputed testimony of record in the instant case, the heat exchanger involved herein transmits or changes the application of energy * * *, work is done * * * and it is a device which transmits or moves force, the same as it does energy * * * and it is an apparatus for applying or moving force to a specific purpose * * *.

In this connection under cross-examination appellant's witness, Mr. Sheridan, testified:

XQ. * * * But in those instances, what I want to get established, if it is a fact, in those instances the spiral heat exchanger is not what you would call a physical integral part of a particular machine of mechanical contrivance; isn't that so? A. That, I think, would depend on the accepted definition of a machine. From my viewpoint, from the engineering viewpoint, a machine is any apparatus that performs work that will either transfer or convert energy.

XQ. You express, or hold those opinions. You're speaking in the scientific, professional way; isn't that so? A. Well, it's in the accepted, or the broad definition of what a machine is. For example, we are primarily concerned with thermodynamics. Of course, dynamics immediately implies some force, some energy, something moving. When you come to a heat exchanger, you are concerned primarily with the mechanics of heat transfer. There, again, we are approaching the machine concept, or interpretation. It is dimensioned. We can determine the amount of work. We measure what can be done. We can pre-determine—it is essential that we do that—that we predetermine the dimensions of the passages, the amount of heat transfer or surface required for the fluids that we handle, such as tars and slurries, and sometimes water—occasionally water, but more often than not it's some form of a chemical, or an acid—or something of that kind. So the exchanger is designed to perform a certain function, a certain work. It is not a static piece of equipment. If it stands static it is useless. If there is no fluid flowing through it, it performs no function, but it is essential to the heat transfer where it is necessary to do so, either for the total process, or for the economics involved.

XQ. Now, is it not the fact that, in accordance with your definition of a machine, you would have to consider an ordinary steam pipe, or radiator, as a machine, since the heat transfer is taking place from within the pipe or radiation, to the air in the room? A. It could be so construed. Mine is the technical, commercial applications of the principles of heat transfer to accomplish useful commercial, industrial work.

This testimony clearly reveals that Mr. Sheridan's opinion that the heat exchangers herein transmit or change the application of energy, transmit or move force the same as they do energy, and are apparatuses for applying or moving force, is based upon the principles of thermodynamics and, furthermore, that his definition of what is a machine is based on the technical applications of the principles of heat transfer. However, the law is well settled that tariff acts are drafted in the language of commerce, which is presumptively that in common use. *Two Hundred Chests of Tea: Smith, Claimant*, 9 Wheat. 428, 437; *C.J. Tower & Sons* v. *United States*, 41 CCPA 195, C.A.D. 550.

The appellant's second contention is that:

If the Court should find that the imported heat exchangers are not machines *per se*, it is respectfully submitted that said articles are properly dutiable as parts of machines, not specially provided for, at the same rate of 13% ad valorem.

In support of this position, appellant cites our decision in *Trans Atlantic Company* v. *United States*, 48 CCPA 30, C.A.D. 758.

We do not agree with appellant's analysis of the *Trans Atlantic* case or of the other cases cited therein. The "part" involved in the *Trans Atlantic* case was a bracket designed *for a door closer*. The door closer met every test of a "machine" as this term is used in the customs law. The same general situation was involved in the case *Welte & Sons* v. *United State*, 5 Ct. Cust. Appls. 164, T.D. 34249, where music rolls for pianos were held to be parts of pianos. In *United States* v. *American Steel and Copper Plate Co.*, 14 Ct. Cust. Appls. 139 T.D. 41673, halftone screens were held to be parts of cameras. In *Stoeger* v. *United States*, 15 Ct. Cust. Appls. 291, T.D. 42472, a 32 shot magazine drum was held to be part of a pistol.

In all these cases, as distinguished from the present case, the merchandise held to be part of a machine was just that. Appellant has failed here to establish wherein the imported heat exchangers are *parts* of any *machine*.

For the foregoing reasons, the judgment of the Customs Court is *affirmed*.