(C.D. 3857)

W. A. GLEESON *v.* UNITED STATES

United States Customs Court, Second Division

(Decided June 25, 1969)

*Brown, Rudnick, Freed & Gesmer* (*M. Frederick Pritzker* and *Donald E. Paulson* of counsel) for the plaintiff.

*William D. Ruckelshaus*, Assistant Attorney General (*Owen J. Rader* and *Velta A. Melnbrencis*, trial attorneys), for the defendant.

Before RAO and FORD, Judges, and DONLON, Senior Judge

DONLON, Judge: Seventeen protests, listed on Schedule A which is annexed hereto and made a part hereof, were consolidated for purposes of trial. Defendant moved that the following entries, embraced within those protests, be dismissed as untimely filed:

In protest 59/15809, entry 917
In protest 59/27093, entries N–14 and N–16
In protest 60/26794, entry N–17
In protest 61/4783, entry N–128

Plaintiff did not object to this motion.

While counsel proceeded to trial on the remaining entries of the consolidated protests, it appears to the court from scrutiny of the official papers as introduced into evidence, that protest likewise was untimely filed as to four of the five entries of protest 59/34592. The relevant dates and entry numbers are as follows:

| Entry No. | Date of liquidation | Date of protest filing |
|-----------|---------------------|------------------------|
| N–331 | 9/24/59 | 11/24/59 |
| N–95 | 9/24/59 | 11/24/59 |
| N–107 | 9/24/59 | 11/24/59 |
| N –128 | 9/24/59 | 11/24/59 |

As to each of these entries, liquidated on September 24, 1959, the statutory time for protest expired on November 23, 1959.

While defendant failed to include these four entries of protest 59/34592 in its motion to dismiss, the court is constrained to recognize *sua sponte* its lack of jurisdiction to adjudicate the protest issues raised as to entries N–331, N–95, N–104 and N–128. Accordingly, protests are dismissed, on the ground of untimely filing, as to the following protested entries:

In protest 59/15809, entry 917
In protest 59/27093, entries N–14 and N–16
In protest 60/26794, entry N–17
In protest 61/4783, entry N–128
In protest 59/34592, entries N–331, N–95, N–107 and N–128.

It was stipulated that the machinery at bar is known as slush molding machine and molds, that the machine has an electrical element, and that the molds do not have an electrical element. The official papers show that the merchandise was imported from Canada at Island Pond, Vermont, on various dates during the period between July 18, 1957, and March 29, 1961.

The machinery, together with the molds, was classified in liquidation as machinery having an electrical element, not specially provided for, under paragraph 353, Tariff Act of 1930, as modified. Plaintiff claims that the correct classification of the merchandise is

as shoe machinery and parts of shoe machinery, entitled to free entry under paragraph 1643 of the Tariff Act of 1930, as modified.

The competing tariff provisions are, in relevant part, as follows:

Paragraph 353, Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121 (T.D. 52739):

> Articles having as an essential feature an electrical element or device, * * *, wholly or in chief value of metal, and not specially provided for:
>
>      *      *      *      *      *      *      *
>
> Other (except * * *)_____ 13¾% ad val.
>
> Parts, finished or unfinished, wholly     The same rate of duty as
> or in chief value of metal, not spe-     the articles of which
> cially provided for, of articles pro-     they are parts
> vided for in any item 353 of this
> Part * * *

Paragraph 1643, Tariff Act of 1930, as modified by the Torquay Protocol, *supra* (T.D. 52739):

> Shoe machinery, whether in whole or in part, including
> repair parts_____ Free

Inasmuch as the liquidation classification, paragraph 353, is a classification that is not applicable to articles that are otherwise specially provided for, plaintiff's burden is to prove by competent evidence that there is a claimed special provision which describes the entry merchandise. The claim is that the merchandise at bar is described, hence is provided for, in paragraph 1643, as modified.

Plaintiff adduced the testimony of Mr. Leo Belliveau, who identified himself as general superintendent of Converse Rubber Company, of Malden, Massachusetts. During the period from 1958 to 1961, he was general foreman of the "making" department at Converse. The witness identified entry N-012, protest 58/12041, as the sole machine at issue in this litigation. He said that the merchandise of the other entries of the several protests were molds. The machine of entry N-012 was imported on July 18, 1957.

There is no evidence to show what Mr. Belliveau's employment was in 1957, although he did say that prior to purchase of the imported machine he investigated, in Montreal and in five "plants" in the United States, the British Rubber Company slush molding machines. He also "contacted several other corporations and companies" to discuss the slush molding process with them.

He further said that a technician from British Rubber Company came to the Malden plant (of Converse) and, with the aid of Converse's mechanics, rebuilt the imported machine under his supervision and set it up for eventual production. This obviously relates to some post-importation date.

It is the machine as imported and on the date of its importation, that will determine classification. We have little or no evidence that speaks persuasively to that issue.

Exhibit 1 is a drawing described as illustrative of Mr. Belliveau's testimony as to the process in which Converse used the machine as developed and set up in the Converse plant by British Rubber Company.

Exhibit 2 is a prototype of the mold used in the heating oven, the device marked number 1 on exhibit 1. Molds vary according to the size and style of the shoe being produced.

Defendant's brief argues that plaintiff has failed to show the chief use which plaintiff claims, on the ground *inter alia* that it is chief use in the United States that governs and not merely use in the importer's factory. The court agrees. It is not enough for plaintiff to prove use in the Converse plant.

In *E. Dillingham, Inc.* v. *United States*, 54 CCPA 121, C.A.D. 922 (1967), the issue was adequacy of proofs as to chief use of a slush molding machine. Judge Kirkpatrick, writing for a unanimous court, said:

> * * * we conclude that the classification of the instant merchandise requires a consideration of use because the statute employed a term, "shoe machinery," which imputes a use.

> * * * We find the testimony of Mr. Bara is without substantial probative value with respect to the question of chief use. For all we know, the imported machinery may be used in any manufacturing operation where molding is one step. Cf. *Louis G. Freeman Co.* v. *United States*, 58 Treas. Dec. 1060, Abstract 13580, where certain "leather-splitting machines" were deprived of the benefit of free entry as shoe machinery since the machines could be used in any factory where splitting leather was needed for any purpose, including the manufacture of shoes.

> The fact that the imported article is being used in the manufacture of shoes is insufficient to establish chief use. In the case of *United States* v. *Spreckels Creameries, Inc.*, *supra*, we stated:

>> It is also the established law that classification according to chief use depends upon use by users, as a whole, of the particular type of commodity involved and not upon actual individual use of the particular shipment in question. [Pp. 124, 125.]

Since it is plaintiff's contention that the molds are an integral part of the shoe machinery, failure of the proofs before us to show that chief use of the machine throughout the United States was, in 1957, as shoe machinery, controls our decision also as to the molds imported to be used as an integral part of the machine. There is no evidence before us to overcome the presumption that the molds are, as classified, parts of an article having as an essential feature an electrical element.

Judgment will be entered dismissing the entries above noted as untimely filed, and overruling the protests as to all other entries.