(C.D. 4082)

E. DILLINGHAM, INC. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided October 2, 1970)

*Allerton deC. Tompkins* for the plaintiff.
*William D. Ruckelshaus*, Assistant Attorney General (*Herbert P. Larsen* and *Andrew P. Vance*, trial attorneys), for the defendant.

Before RAO, FORD, and NEWMAN, Judges

RAO, Chief Judge: The merchandise involved in this case consists of 50 pairs of molds for use with the "Bata Monoplax 'Atlas' Unit" for the production of plastic overshoes designated as "Susan Boots." It was assessed with duty at 13¾ per centum ad valorem under paragraph 353 of the Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739, as parts of articles having as an essential feature an electrical element or device. It is claimed to be free of duty under paragraph 1643 of said tariff act, as shoe machinery, in whole or in part. It is conceded that the classification under paragraph 353 is correct if the imported molds are not more specifically described in paragraph 1643.

The pertinent provisions of the tariff act are as follows:

Paragraph 353, Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade:

> Articles having as an essential feature an electrical element or device, such as electric motors, * * *, finished or unfinished, wholly or in chief value of metal, and not specially provided for:

> \*   \*   \*   \*   \*   \*   \*

Other (except * * *) _____ 13¾% ad val.
Parts, finished or unfinished, wholly or in chief
value of metal, not specially provided for, of
articles provided for in any item 353 of this
Part (not including X-ray tubes or parts
thereof) _____ The same rate of
duty as the ar-
ticles of which
they are parts.

Paragraph 1643, Tariff Act of 1930:

Linotype * * * machines, shoe machinery,
* * *, all the foregoing whether in whole or
in part, including repair parts. [Free]

A motion was made during the trial for the incorporation of the
record in *E. Dillingham, Inc.* v. *United States*, 54 CCPA 121, C.A.D.
922 (1967) but, upon objection, decision was reserved. That case
involved the classification of the "Bata Monoplax Process Unit
'Atlas'" of which the merchandise involved herein is claimed to be
parts. The issue there was whether the machine was classifiable as
shoe machinery. The issue here is whether the imported molds, which
are used with that machine, are classifiable as parts of shoe machinery.
It appearing that there are questions of law and fact substantially
the same in character as those involved in the previous case, the
motion to incorporate is granted.

Plaintiff called three witnesses in the instant case, the first two of
whom had also testified in the previous case: Charles Bara, Jr.,
who was from 1958 to 1965 assistant plant engineer of Bata Shoe
Company of Belcamp, Md., and was previously employed there in the
engineering division; Robert R. Petrick, who has been a shoe salesman
for the Bata Shoe Company for 18 years, and Alexander Kotek,
machinery development engineer in the Bata Engineering Division
of Bata Shoe Company of Canada, Ltd.

According to the evidence presented, Bata Shoe Company, Inc., is
the largest manufacturer of shoes in the world. It produces all kinds
of shoes, including canvas, leather, waterproof, tropical, and military.
Bata Shoe Company of Canada, Ltd., designs and manufactures
shoe machinery including monoplax units which produce slush molded
over-the-foot shoes and over-the-shoe footwear; injection molding
machines which make running shoes with a canvas upper, and plastic
shoes, and vulcanizing shoe machinery which makes rubber shoes and
shoes with rubber bottoms and canvas, leather or man-made material
uppers. The company does not produce general machinery.

The merchandise involved herein consists of molds designed for use with the Bata Monoplax Atlas Unit at Belcamp, Md., to produce 'Susan Boots for which such molds are essential. The Susan Boot is an overshoe designed for youngsters, having a large opening at the top 'and a strap with a buckle up front. It can easily be slipped on. It is a plastic overshoe or galosh which is worn over the shoe and extends up over the ankle.

The Susan Boot is made from a thermo-plastic material called plastisol, a polyvinyl chloride in liquid form. To produce the article a mold is attached to a carrier or conveyor of the monoplax unit by means of a mounting plate. The plastic material is poured into the mold and the mold is carried on the conveyor through the various steps required to make slush molded footwear. The mold with the material therein is subjected to heat which causes the material to jell and build up on the inside of the mold. When the article has sufficient thickness the excess of the material is poured out of the mold and the mold is carried through a fusing oven. After the article is fused, it is carried through a cooling station, after which it is stripped or pulled out of the mold. It is then trimmed and finished. The mold remains on the carrier and the cycle starts again. The monoplax unit can also be used to manufacture other types of footwear by employing different molds, but it cannot produce footwear without a mold. The machine is designed to make plastic footwear, such as moccasins, high shoes called boots, overshoes, galoshes, and a casual type shoe. The molds are readily changeable but adjustments of the machines are sometimes necessary for the production of different types of footwear.

Mr. Kotek testified that he was instrumental in designing all the monoplax units which were manufactured by Bata in Canada. A schedule of such units produced from 1957 to 1968, inclusive, was received in evidence as exhibit 3. It lists eight machines, only one of which was located in the United States, the one at Belcamp, Md. The witness testified that he had seen six of the machines in operation and that they were used to produce shoes. He said that such machines had certain features indicating their use as shoe machines, such as the mold carrier, the heating ovens, the fusing oven, the cooling station, and the electrical and air circuitry.

Mr. Bara testified in the incorporated case that the monoplax unit was a slush molding machine but that he was unfamiliar with other types of machines which operate by the same process. His knowledge of slush molding machines was limited to those used in shoe production. He had never heard of a doll being produced on a monoplax unit.

In the instant case Mr. Kotek testified that slush molding machines use a product called plastisol which is a polyvinyl chloride in liquid form, but he was not familiar with polyvinyl chlorides and their uses outside the shoe industry. He said that if one wanted to produce a doll on a monoplax unit, a mold would be required, but he did not know whether it could be done and would have to see a mold in order to answer. The only slush molding machinery he was familiar with was that used to produce shoes.

Mr. Petrick testified that in his opinion the term "shoe" is a generic one, covering various types and styles of footwear, including oxfords, boots, sandals, and slippers. He said that low-cut shoes are referred to as oxfords and high-cut shoes as boots to distinguish them. He defined a boot as "a high shoe, worn over the foot or over another shoe." He stated that in common usage some articles are referred to as shoes and others as boots, the distinction being that a boot is a high shoe. He regarded the term "footwear" as more inclusive, as it would embrace socks.

In order for the molds before the court to be classified as parts of shoe machinery, it must be determined that the unit, of which they are claimed to be parts, is a shoe machine, that is to say a machine of a class which is chiefly used in the production of "shoes."

In the incorporated case, the court did not determine whether the articles produced by the Bata monoplax unit fell within the term "shoe." It held, however, that appellant had failed to establish the chief use of the machinery, stating (pp. 124–125) :

> * * * We find the testimony of Mr. Bara is without substantial probative value with respect to the question of chief use. For all we know, the imported machinery may be used in any manufacturing operation where molding is one step. Cf. *Louis G. Freeman Co.* v. *United States*, 58 Treas. Dec. 1060, Abstract 13580, where certain "leather-splitting machines" were deprived of the benefit of free entry as shoe machinery since the machines could be used in any factory where splitting leather was needed for any purpose, including the manufacture of shoes.

> The fact that the imported article is being used in the manufacture of shoes is insufficient to establish chief use. In the case of *United States* v. *Spreckels Creameries, Inc., supra,* we stated :

>> It is also the established law that classification according to chief use depends upon use by users, as a whole, of the particular type of commodity involved and not upon actual individual use of the particular shipment in question.

See also *W. A. Gleeson* v. *United States*, 62 Cust. Ct. 740, C.D. 3857 (1969), appeal pending (Appeal 5368). Cf. *C. H. Powell Company* v. *United States*, 63 Cust. Ct. 302, C.D. 3912 (1969), where there was evidence that the presses were sold exclusively to various shoe manu-

facturers in the United States and used by them only to cut leather parts for shoes.

Plaintiff has sought to overcome the deficiencies of proof in the previous case by evidence showing that eight monoplax units were produced by Bata of Canada during 1957–1968; that only one of those was used in the United States and it was used to produce shoes, and that the witness had seen five of the others and that they were used to produce shoes.

However, there is no evidence to show whether monoplax units similar to the Bata units were in use in the United States, and if so, what they were used for.

It is clear from the record that the Bata monoplax unit is a slush molding machine. Slush molding is a technique particularly adaptable to the production of rubber-like moldings from vinyl plastisols. Kirk-Othmer Encyclopedia of Chemical Technology, vol. 10, p. 815. The Bata monoplax unit uses plastisol and its method of operation, as described by the witnesses in this case and in the incorporated case, corresponds to that of slush molding machines in general. Plastics Engineering Handbook of the Society of the Plastics Industry, Inc., pp. 311, ff.; Modern Plastics Encyclopedia, 1968, p. 895; Modern Plastics Encyclopedia, 1966, pp. 846–847. The features said by Mr. Kotek to adapt the Bata unit peculiarly to the production of shoes are apparently those of all slush molding machines. Modern Plastics Encyclopedia, 1966, pp. 846–847.

Slush molding is used in the production of a wide range of products, including toys, dolls, doll parts, insulated boots, and electrical component covers. Modern Plastics Encyclopedia, 1965, p. 274; Modern Plastics Encyclopedia, 1964, p. 677. According to one authority, the first real impetus to the slush molding of plastisols was in the doll industry. Plastics Engineering Handbook, op. cit., p. 307.

It is evident that slush molding is not limited to the production of footwear. Therefore, to establish that the Bata monoplax unit belongs to a class of merchandise chiefly used as shoe machinery, it would have to be shown that there is a kind of slush molding machinery which is chiefly used as shoe machinery and that the Bata monoplax unit belongs to that class. Such evidence is lacking in the instant case. The witnesses were familiar only with machinery used in the footwear industry and could make no comparison with slush molding machinery used for general purposes. While they knew of no use of the Bata monoplax unit for the manufacture of articles other than footwear, it may well be that it could be so used. According to the record, it can produce different types of footwear with the use of different molds and some adjustment of the machinery. It is therefore reasonable to assume that the Bata unit itself could be adapted to the production of other slush molded articles.

Since it has not been established that the Bata monoplax unit, a slush molding machine, belongs to a class of articles which is chiefly used as shoe machinery, the molds involved herein, which are claimed to be essential parts of the unit, are not classifiable as parts of shoe machinery. Plaintiff's argument that because the molds are dedicated to use in making footwear they constitute shoe machinery in part, even though the machine of which they are part may have other uses is untenable. The words "in part" in paragraph 1643, *supra*, and its predecessors have long been interpreted to mean "parts of" the articles enumerated. *Decorated Metal Manufacturing Co. (Inc.)* v. *United States, et al.*, 12 Ct. Cust. Appls. 140, T.D. 40061 (1924); *Carpenter Shoe Co., Inc.* v. *United States*, 64 Treas. Dec. 759, Abstract 24577 (1933). For plaintiff to prevail it must establish not only that the parts are dedicated to use with the machinery, but that the machinery *per se* is chiefly used as shoe machinery. *J. M. Altieri* v. *United States*, 63 Cust. Ct. 261, C.D. 3906 (1969).

In the view we take of the case, it is unnecessary to determine whether or not plastic overshoes, such as "Susan Boots," are "shoes" within the meaning of the tariff act.

For the reasons stated, the protest is overruled and judgment will be entered for the defendant.